IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| KAMESHA BARNETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:05CV590 |
| | ) | |
| BROOK ROAD, INC., t/a | ) | |
| CAR AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The Plaintiff, Kamesha Barnette, brought claims against the Defendant, Brook Road, Inc., which trades as Car America ("Car America"), following a failed purchase of a car and repossession of that car after financing fell through. Barnette asserts claims under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 - 1691f, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 - 1681x, the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. §§ 59.1-196 - 207 (Michie 2001 & Supp. 2005), and the Uniform Commercial Code, as well as common law actions of fraud, conversion, and breach of contract. The Defendant has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the FCRA, fraud, conversion, and the damages portion of the VCPA claims.[1] The parties have briefed the issues, presented oral argument at a hearing, and filed supplemental briefing. Thus, the Motions for Judgment are ripe for disposition.

---

[1]At oral argument, the Defendant withdrew the Motion for Judgment as to the conversion claim, stating that he would revisit the issue in a motion for summary judgment.

## I. Standard of Review

A court shall grant a motion for judgment on the pleadings under Rule12(c) where "it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." *Shooting Point, L.L.C. v. W.M. Cumming*, 238 F. Supp. 2d 729, 735 (E.D. Va. 2002). This standard of review is identical to that applied to a motion to dismiss under Rule12(b)(6) of the Federal Rules of Civil Procedure. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002); *Dauster v. Household Credit Servs., Inc.*, 396 F. Supp. 2d 663, 665 (E.D. Va. 2005). Accordingly, the Court will view the allegations and all reasonable inferences drawn therefrom in the plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## II. Facts

This case involves an alleged so-called "yo-yo" car sale. On May 12, 2004, Barnette received a letter from Car America indicating she was "pre-approved" to purchase a vehicle. (Compl. ¶ 8.) When she arrived at Car America, a salesperson informed her that she qualified for certain vehicles, including a Mitsubishi Galant. (*Id.* ¶ 11.) The salesperson stated that if Barnette purchased the Galant, Car America would provide insurance in the event that the car were totaled, an extended warranty, and roadside assistance. (*Id.* ¶¶ 11, 14.) After negotiations, the Plaintiff agreed to purchase the Galant and pay a $500.00 down payment, of which she paid $200.00 on May 13, 2004. (*Id.* ¶¶ 14-15.)

On May 13, 2004, Barnette completed a Buyer's Order. (*Id.* ¶ 16, Ex. 1.) The Buyer's Order indicated that for sales involving dealer-arranged financing, the sale was contingent upon approval of a Retail Installment Sales Contract ("RISC"). (*Id.* Ex. 1.) Car America also accepted

the Plaintiff's completed application for credit, informed her that she was approved for financing, and stated that to complete the sale she merely needed to sign some paperwork. (*Id.* ¶ 16.) When Barnette completed the paperwork, Car America indicated that she was approved for the loan and provided details about her car payment schedule. (*Id.* ¶ 17.) She was not provided a copy of the RISC. (*Id.* ¶ 18.) Barnette also signed a Temporary Certificate of Ownership (*Id.* Ex. 2), agreed to purchase insurance for the Galant, and signed the title of her previous car over to Car America as a trade-in. (*Id.* ¶¶ 19-20.) Car America did not provide Barnette with the title for the Galant. (*Id.* ¶¶ 45, 55.)

On May 17, 2004, Barnette submitted proof of insurance and obtained temporary tags from Car America. (*Id.* ¶ 22.) On May 28, 2004, Barnette paid the remaining $300.00 of the down payment, and Car America gave her a free car wash certificate. (*Id.* ¶ 23.) During this period, Car America submitted Barnette's application for financing to one or more lenders. (*Id.* ¶ 21.) When Barnette returned to Car America for the car wash, she was informed that her loan was refused based on her insufficient income and that she must obtain a co-signer or the deal would be cancelled. (*Id.* ¶¶ 24-25.)

On or about June 2, 2004, a Car America employee began calling Barnette in a harassing manner. (*Id.* ¶ 26.) The following day, Car America repossessed her car from her workplace. (*Id.* ¶ 27.) Not knowing it had been repossessed, Barnette reported to her employer that the car had been stolen. (*Id.* ¶ 27.) Through June 7, 2004, Car America continued to harass the Plaintiff by calling her and asking her to negotiate a suitable loan. (*Id.* ¶ 28.)

Barnette never received from Car America written notice of an adverse action. (*Id.* ¶ 30.) From the failed sale of the Galant, Barnette incurred damages arising from the down payment,

insurance premium, lost wages, cost of obtaining substitute transportation, mental distress, and medical expenses for treatment resulting from anxiety.

### III. Analysis

**A. The Fair Credit Reporting Act (FCRA)**

Barnette brought a claim for violation of 15 U.S.C. § 1681m(a) and (b) of FCRA alleging that the Defendant procured and used her credit report, rendered an adverse action based on that report, and failed to provide notice of the adverse action. To enforce these protections, she relies upon the private right of action found in 15 U.S.C. §§ 1681n and 1681o. The Defendant counters that the 2003 amendments to FCRA eliminated the private right of action for claims under § 1681m. Resolution of this dispute requires an examination of FCRA.

Congress enacted FCRA in 1970 to promote an efficient banking system through "fair and accurate credit reporting" and to protect consumer privacy by requiring consumer reporting agencies to "adopt reasonable procedures" as part of their "vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)-(b). In furtherance of these dual purposes, Congress authorized a private right of action to recover damages for willful, 15 U.S.C. § 1681n, and negligent, 15 U.S.C. § 1681o, noncompliance with the requirements of FCRA. *See TRW Inc. v. Andrews*, 534 U.S. 19, 24 (2001); *Austin v. J.C. Penney Co.*, 162 F. Supp. 2d 495, 497 (E.D. Va. 2001). Congress also provided for administrative enforcement of FCRA's protections. 15 U.S.C. § 1681s.

Congress amended the FCRA by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (codified as amended at 15 U.S.C. §§ 1681 - 1681x (2003)). Section 311(a) of FACTA added 15 U.S.C. § 1681m(h), which, according to the

Plaintiff, closed the so-called "counter offer exception" by requiring that notice be given to a consumer when his or her credit report is used in "connection with an application for, or a grant, extension, or other provision of, credit on material terms that are materially less favorable than the most favorable terms available . . . ." 15 U.S.C. § 1681m(h)(1). At issue here is a portion of § 311 that provides as follows:

> (8) Enforcement
>
> > (A) No civil actions
> >
> > > Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section.
> >
> > (B) Administrative enforcement
> >
> > > This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8). According to the Defendant, in this provision, Congress stripped the private right of action for violations of this "section," meaning § 1681m. The Plaintiff argues instead that Congress intended to withhold a private right of action for enforcement of only the newly created requirements under § 1681m(h), which concern the "counter offer exception," but not for the entirety of § 1681m. Plaintiff contends that the word "section" is a scrivener's error and should read "subsection," meaning § 1681m(h). For guidance in interpreting § 1681m(h)(8), the Court turns to familiar canons of statutory construction.

Discerning congressional intent begins with an examination of the statutory text. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). "Statutory construction is a 'holistic endeavor.'" *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (quoting *United Sav. Assn. of*

*Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). Statutory language only has meaning within the context of the broader statute. *See Graham County Soil & Water Conservation Dist. v. United States*, 125 S. Ct. 2444, 2449 (2005). It is axiomatic that "'in expounding a statute, [a court] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United States v. Heirs of Boisdore*, 49 U.S. 113, 122 (1849)). Thus, it requires, "at a minimum," examination of "a statute's full text, language as well as punctuation, structure, and subject matter." *Id.*; *accord Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct 2611, 2620 (2005) ("[W]e must examine the statute's text in light of context, structure, and related statutory provisions.").

The Court begins its analysis with § 1681m(h)(8) and the word "section." Congressional drafting manuals set forth the statutory hierarchy and give "section" context:

> "To the maximum extent practicable, a section should be broken into–
>
> "(A) subsections (starting with (a));
>
> "(B) paragraphs (starting with (1));
>
> "(C) subparagraphs (starting with (A));
>
> "(D) clauses (starting with (i)) . . . ."[2]

---

[2]The Senate drafting manual similarly provides:

> "A section is subdivided and indented as follows:
>
> "(a) Subsection.--
>
> "(1) Paragraph.--
>
> "(A) Subparagraph.--

*Koons*, 543 U.S. at 60 (quoting House Legislative Counsel's Manual on Drafting Style, HLC No. 104-1, p. 24 (1995)). As defined by the drafting manuals, § 1681m is a "section," whereas § 1681m(h) is a "subsection." This provides the basis for Defendant's argument.

Under Defendant's premise, Congressional use of the term "section" indicates that the limitation of the private right of action applies to § 1681m in its entirety. Indeed, relying heavily on a "plain language" reading of the word "section" in § 1681m, the courts addressing this issue thus far have found that FACTA eliminated the private right of action for § 1681m. *See, e.g., Stavroff v. Gurley Leep Dodge, Inc.*, 413 F. Supp. 2d 962, 966-67 (N.D. Ind. 2006); *White v. E-Loan, Inc.*, 409 F. Supp. 2d 1183, 1187 (N.D. Cal. 2006); *Phillips v. New Century Fin. Corp.*, No. SACV05-0692DOC(RNBX), 2005 WL 3828735, at *4 (C.D. Cal. Nov. 9, 2005); *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993, 999 (N.D. Ill. 2005); *see also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) (in dicta stating that § 1681m(h)(8) eliminated private right of action). Interpretation of § 1681(h)(8), however, does not end with the word "section." As the Supreme Court has instructed, this Court must look beyond "a single sentence or member of a sentence" to the immediate statutory context and related provisions.

No dispute exists as to the fact that before the 2003 amendments, FCRA authorized a private right of action to remedy noncompliance with § 1681m. *See Austin*, 162 F. Supp. 2d at 497. "'[A]bsent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law.'" *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331,

---

"(i) Clause.--"

*Koons*, 543 U.S. at 61 (quoting Senate Office of the Legislative Counsel, Legislative Drafting Manual 10 (1997)).

337 (4th Cir. 2005) (quoting *In re Witt*, 113 F.3d 508, 513 (4th Cir. 1997)). Thus, in amending FCRA, Congress should have expressed a clear intent to alter the existing enforcement scheme and revoke the private right of action. *See United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc).

The opposite occurred. In a provision unexamined by any court addressing the FACTA amendments to date, section 312(f) of FACTA provides that, "[n]othing in this section, the amendments made by this section, or any other provision of this Act shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. 1681n, 1681o) that existed on the day before the date of enactment of this Act." Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, § 312(f), 117 Stat. 1952, 1993 (codified as amended at 15 U.S.C. § 1681n, Historical and Statutory Notes (2003)).[3] As a portion of the Statutes at Large, despite its placement in the Historical and Statutory Notes following 15 U.S.C. § 1681n, § 312(f) has the force of law. *See Nat'l Bank*, 508 U.S. at 448.

---

[3]As written in the Historical and Statutory Notes of 15 U.S.C. § 1681n, § 312(f) reads as follows:

> Nothing in this section, the amendments made by this section [amending 15 U.S.C.A. §§ 1681s and 1681s-2 and enacting this note], or any other provision of this Act [the Fair and Accurate Credit Transactions Act of 2003, which enacted 15 U.S.C.A. §§ 1681c-1, 1681c-2, 1681s-3, 1681w, and 1681x and chapter 77 of Title 20, 20 U.S.C.A. §§ 9701 to 9708, amended 15 U.S.C.A. §§ 1681a to 1681c, 1681g, 1681i, 1681j, 1681m, 1681o, 1681p, 1681s, 1681s-2, and 1681t to 1681v, and 31 U.S.C.A. § 5318, enacted provisions set out as notes under this section and 15 U.S.C.A. §§ 1681, 1681a to 1681c, 1681c-1, 1681i, 1681j, 1681m, 1681n, 1681s-2, and 1681s-3, and amended provisions set out as a note under 15 U.S.C.A. § 1601; for complete classification, see Tables] shall be construed to affect any liability **under section 616 or 617** of the Fair Credit Reporting Act *(15 U.S.C. 1681n, 1681o)* [this section and 15 U.S.C.A. § 1681o] that existed on the day before the date of enactment of this Act [Dec. 4, 2003]. *Id.* (Emphasis supplied).

The "liability" left unaffected by FACTA's amendments explicitly includes that created by the enforcement of FCRA's requirements through a private right of action. Thus, § 312(f) dictates that private individuals may still enforce the requirements of § 1681m that antedated FACTA. This directly contravenes Defendant's reading of the word "section" in § 1681m(h)(8) to include all of § 1681m, thereby eliminating a private right of action under §§ 1681n and 1681o for violations of § 1681m. Interpreting § 1681m(h)(8) to apply only to subsection (h), however, would resolve this conflict because subsection (h) established new rights that did not exist before enactment of FACTA and, thus, does not fall within the ambit of § 312(f).[4]

While the Court finds that § 312(f) speaks authoritatively to Congressional intent, further examination of FCRA and FACTA aids resolution of the ambiguity created by the word "section" in § 1681m(h)(8). First, as recognized by other courts, had Congress intended § 1681m(h)(8) to apply to the entire section, the logical location for such provision would have been a new subsection (i), not the final paragraph of subsection (h). *Murray*, 386 F. Supp. 2d at 997. As written, the placement of § 1681m(h)(8) within the statute creates an ambiguity to the seemingly straightforward interpretation of the word "section" urged by Defendant. Structurally, § 1681m(h)(8) suggests that it applies only to the specific type of credit transaction addressed by subsection (h).

Second, construing § 1681m(h)(8) to eliminate a private right of action for § 1681m

---

[4]The Defendant asserts that § 312(f) merely provides that FACTA does not apply retroactively. (Def.'s Second Suppl. Mem. Supp. Mot. J. Pleadings 2-3.) This argument fails to persuade. Unless Congress expresses a clear contrary intent, statutes are presumed to be non-retroactive. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). Section 312(f) does not bear the indicia of a statutory provision purporting to address retroactivity. *See, e.g.,* 15 U.S.C. § 77rrr(c) (retroactivity provision using the term "retroactive"); 15 U.S.C. § 636(m)(3)(F)(v)(I) (same); 15 U.S.C. § 6781(a) (same).

renders superfluous a different provision of the very same FACTA amendment, § 312(e), codified at 15 U.S.C. § 1681s-2(c)(3). Section 1681s-2(c) states that, "sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (e) of section 1681m of this title." 15 U.S.C. § 1681s-2(c)(3). If § 1681m(h)(8) eliminated the private right of action for all of § 1681m, including subsection (e), then § 1681s-2(c)(3) merely reiterates § 1681m(h)(8) as to a particular subsection, rendering it superfluous.[5] Construction of § 1681(h)(8) as applying to only subsection (h), however, eliminates this redundancy. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc.*, 534 U.S. at 31 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Thus, reading § 1681m(h)(8) and § 1681s-2(c)(3) in harmony counsels against revocation of the private right of action for all of § 1681(m).

Third, common sense suggests that had Congress sought to eliminate the ability of consumers to enforce the requirements created by FCRA, an act intended to protect consumer privacy, some member of the legislature would have noted this withdrawal. *See Koons*, 543 U.S. at 63; *Lamie*, 540 U.S. at 539; *Dewsnup v. Timm*, 502 U.S. 410, 419-20 (1992); *Chisom v. Roemer*, 501 U.S. 380, 396 (1991). An examination of the legislative history reveals no mention of a wholesale withdrawal of a preexisting private right of action. *See, e.g.,* 149 Cong. Rec.

---

[5] At least one court has found that these provisions are not "totally redundant" because the Federal Trade Commission issued regulations effectuating § 1681s-2(c)(3) eight months prior to issuing regulations effectuating § 1681m(h)(8). *White*, 409 F. Supp. 2d at 1186. This Court finds such a distinction unpersuasive. Congress enacted the two provisions simultaneously on December 4, 2003, creating the redundancy at the time of FACTA's passage. The date of implementation by an agency is immaterial to an analysis of the statute created by Congress.

H12198 (2003); 149 Cong. Rec. S13863 (2003); 149 Cong. Rec. E2512 (2003).  But the Court need not delve deeply into an examination of the legislative history of FACTA.  Congress was not silent on the issue.  Speaking through the text of § 312(f), Congress expressly preserved the private right of action in all but the newly enacted subsections.

Considering these three circumstances alongside the clear expression of intent in § 312(f), the Court must conclude that the use of "section" instead of "subsection" in § 1681m(h)(8) was a drafting error.  However, the standard to correct a scrivener's error is high: a court must be convinced that the existing statutory language was enacted by mistake and contravenes the law's true object and design.  *Nat'l Bank*, 508 U.S. at 462.  Congress, not the courts, rewrites legislative drafting errors.  *Lamie*, 540 U.S. at 542.

Here, three considerations suggest correction of the scrivener's error.  First, an elimination of private right of action under FCRA would contravene the express remedial rationale underlying Congressional passage of FCRA in the first place.  *See* 15 U.S.C. § 1681(a).  Second, § 312(f) provides an extensive statement countermanding any ambiguity created by use of the single word "section" in § 1681m(h)(8).  Third, the majority of the courts addressing this issue have noted that the architects of FACTA employed rather imprecise draftsmanship overall.  *See, e.g., Stavroff*, 413 F.Supp. 2d at 966-67 (noting "there is no way to 'perfectly reconcile the contents of § 1681m(h)(8) with the remainder of § 1681m'") (quoting *White*, 409 F. Supp. 2d at 1187); *Murray*, 386 F. Supp. 2d at 997 ("The court agrees . . . that § 1681m is not a model of precise draftsmanship.").  With this backdrop, and cognizant of the high standard required to correct a drafting error, the Court is convinced that Congress, through § 312(f), expressed its intent that FACTA not disturb any pre-existing private right of action established under FCRA.

11

By correcting § 1681m(h)(8) to state "subsection" rather than "section," the Court would be giving effect to the design set forth in FACTA. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 498-99 (1999) (Stevens, J., concurring) (finding scrivener's error and substituting the word "Act" for the word "section" to effectuate congressional intent); *Nat'l Bank*, 508 U.S. at 462. Accordingly, the Court finds that the limitation in § 1681m(h)(8) should read "subsection" rather than "section," thereby applying solely to subsection (h) and not eliminating the private right of action for violations of the remainder of § 1681m.

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's FCRA claim is DENIED.

**B. Fraud**

Car America contends that a breach of contract claim undergirds Barnette's fraud claim, raising a bar under the economic loss rule. In its most recent pronouncement on this rule, the Supreme Court of Virginia stated, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). "Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988). Thus, a court must determine "whether a cause of action sounds in contract or tort," by ascertaining "the source of the duty violated." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998).

> "If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of

exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort."

*Factory Mut. Ins. Co. v. DLR Contracting, Inc.*, No. 3:04CV834, 2005 WL 2704502, at *5 (E.D. Va. Oct. 20, 2005) (quoting *McDevitt*, 507 S.E.2d at 347).

The Court's inquiry begins with the allegations contained in the Complaint. Barnette asserts that Car America misrepresented to her that by signing the Buyer's Order and the credit contract she would become the owner of the Galant. (Compl. ¶¶ 52-53.) Car America further misrepresented that Barnette had been approved for financing. (*Id.* ¶ 54.) Car America knew that these and other statements were false when it made them and did so to induce Barnette to enter into a contract to purchase the Galant. (*Id.* ¶¶ 52, 63.) Barnette relied on these misrepresentations and suffered damages. (*Id.* ¶¶ 53, 62.)

Taken together, these allegations do not state a claim for disappointed economic expectations or breach of contract. Instead, they comprise a claim for fraudulent inducement to enter into a contract. Actual fraud consists of the following elements: "'(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *McDevitt*, 507 S.E.2d at 346 (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). "'When [the promisor] makes the promise, intending not to perform, [her or] his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to [her or] his detriment, is actionable as an actual fraud.'" *Flip Mortgage Corp. v. McElhone*, 841

F.2d 531, 537 (4th Cir. 1988) (quoting *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985)); *accord McDevitt*, 507 S.E.2d at 348.

Citing *Colonial Ford*, the Fourth Circuit recognized the distinction "between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract." *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988). Thus, a statement, known to be false when uttered, that is made with the intent to induce someone to enter into a contract, can support a claim of fraud that is independent of a breach of contract. *See Tidewater Beverages Servs., Inc. v. Coca Cola, Co.*, 907 F. Supp. 943, 948 (E.D. Va. 1995); *Colonial Ford*, 325 S.E.2d at 94. Barnette alleged that Car America made statements that it knew at the time were false in order to induce her to sign a contract to purchase the Galant. These allegations state a claim for fraud that falls outside of the economic loss rule.[6] *See City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 447 (4th Cir. 1990).

Car America also asserts that Barnette cannot recover for emotional distress. In support of its argument, the Defendant cites *Russo v. White*, 400 S.E.2d 160 (Va. 1991), a case dealing with the independent tort of intentional infliction of emotional distress. *Id.* at 162. The Plaintiff, however, has not sought to state such a claim, but has merely asserted, in her calculation of

---

[6] At oral argument, the Defendant stated that the Supreme Court of Virginia's decision in *Filak v. George*, 594 S.E.2d 610 (Va. 2004), established that there is "no common law duty not to lie." The court did not expressly state such a rule. Nor did it expressly overrule the extensive precedent recognizing the tort of fraud in the inducement. This Court declines the Defendant's invitation to extend the *Filak* decision beyond the bounds articulated by the Supreme Court of Virginia.

damages, emotional distress that manifested in an anxiety attack for which she sought medical treatment. Accordingly, the Defendant's argument is inapposite.[7]

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's Fraud claim is DENIED.

## C. The Virginia Consumer Protection Act ("VCPA")

The VCPA authorizes damages as a remedy for violation of its provisions: "Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater." Va. Code Ann. § 59.1-204 (Michie 2001 & Supp. 2005). The Defendant argues that the authorization to recover "actual damages" provides a remedy to recoup economic damages, but not "personal injury" damages such as emotional distress. In support of its position, the Defendant asserts that "actual damages" are limited to "pecuniary, out-of-pocket losses." *See Deane v. Novacare Orthotics and Prosthetics East, Inc.*, 50 Va. Cir. 418, 419-20 (Va. Cir. Ct. 1999); *Devonshire v. EurAuPair Int'l, Inc.*, 40 Va. Cir. 149, 151 (Va. Cir. Ct. 1996). *But see Lambert v. Downtown Garage, Inc.*, 47 Va. Cir. 88, 89 (Va. Cir. Ct. 1998).

The Court finds more persuasive, however, the Plaintiff's argument that, as defined by the Supreme Court of Virginia, albeit in another context, "[a]ctual or compensatory damages, the terms being synonymous, are damages in satisfaction of, or in recompense for, loss or injury sustained. Either term covers all loss recoverable as a matter of right and includes all damages

---

[7]The Defendant has not argued that the Plaintiff failed to allege the requisite physical harm or wanton and willful conduct necessary to support damages based on emotional distress. *See Beaty v. Manor Care, Inc.*, No. 02-1720-A, 2003 U.S. Dist. LEXIS 25044, at *20 (E.D. Va. Feb. 10, 2003). Accordingly, the Court takes no position on the validity of the Plaintiff's claim as to damages attributable to emotional distress.

other than punitive or exemplary damages." *News Leader Co. v. Kocen*, 3 S.E.2d 385, 391 (Va. 1939). "Compensatory damages are those allowed as a recompense for loss or injury actually received and include loss occurring to property, necessary expenses, insult, pain, mental suffering, injury to the reputation, and the like." *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 276 (Va. 1967).

Courts interpret statutes under the presumption that the legislature acts with knowledge of existing law as stated by the courts. *Langley*, 62 F.3d at 605; *Waterman v. Halverson*, 540 S.E.2d 867, 869 (Va. 2001). Thus, by employing the term of art "actual damages," the legislature is presumed to have adopted the construction given by the courts. Had the General Assembly intended to limit "actual damages" to economic damages or out-of-pocket expenses, thereby altering the existing court definition, it must have done so expressly. *See In re Witt*, 113 F.3d at 513. Under the Supreme Court of Virginia's definition of "actual damages," the Court finds that the VCPA authorized recovery for emotional distress.

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's VCPA claim is DENIED.

### IV.  Conclusion

Based on the foregoing reasons, the Court denies the Defendant's Motions for Judgment (Docket Nos. 24, 25). An appropriate Order shall issue.

                                              /s/
                                      M. Hannah Lauck
                                      United States Magistrate Judge

Richmond, Virginia
Date: May 3, 2006